UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-23596-CV-UNGARO/O'SULLIVAN

GELDY LOPEZ,

      Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on the Plaintiff's Motion for Summary Judgment (DE #17, 2/20/20) and the Defendant's Motion for Summary Judgment (DE #24, 4/20/20). The plaintiff seeks reversal of the Social Security Administration's (SSA) denial of Disability and Disability Insurance Benefits (DIB). The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 405(g), and is properly before the Court for judicial review of a final decision of the Commissioner of the SSA. This matter was referred to the undersigned by the Clerk's Notice of Assignment (DE #2, 8/27/19). Having carefully considered the filings and applicable law, the undersigned recommends that the Plaintiff's Motion for Summary Judgment (DE #17, 2/20/20) be **DENIED** and the Defendant's Motion for Summary Judgment (DE #24, 4/20/20) be **GRANTED** in accordance with the following Report and Recommendation.

## PROCEDURAL HISTORY

On May 17, 2016, the plaintiff, Geldy Lopez, completed her application for Disability Insurance Benefits (DIB). (Tr. 229)[1].  The plaintiff applied for Supplemental Security Income (SSI) on May 20, 2016. (Tr. 231).  During the hearing held before the Administrative Law Judge (ALJ), the plaintiff's attorney indicated an amended onset date of the application to May 11, 2016. (Tr. 76). The plaintiff's claim was initially denied on August 26, 2016. (Tr. 15). The plaintiff appealed the original ruling, which was denied on December 19, 2016. (Tr. 15, 136). On March 9, 2017, the Office of Disability Adjudication and Review wrote a letter to the plaintiff informing her they received her request for a hearing before an ALJ. (Tr. 147). On August 15, 2018, a hearing was held before an ALJ. (Tr. 65-89). The plaintiff testified at the hearing and was represented by counsel. (Tr. 65-89).

Lorin Lovely, a vocational expert ("VE"), also testified at the hearing. (Tr. 81-88).  After considering the evidence, the ALJ issued a decision and determined that the plaintiff was not under a disability within the meaning of the Act from May 2016, through the date of the ALJ's decision because the plaintiff still had the residual functional capacity ("RFC") to perform work that exists within the national economy. (Tr. 32).  The ALJ's decision became final on July 30, 2019, when the Appeals Council denied the plaintiff's request for review. (Tr. 1-8). The plaintiff filed this action on August 27, 2019. (DE #1, 8/27/2019). The plaintiff alleges that the ALJ improperly assessed

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration (DE# 13, 11/15/19). The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

the plaintiff's alleged symptoms and limitations, failed to resolve an "apparent conflict", and failed to articulate the weight accorded to the treating source opinions. The plaintiff filed her Motion for Summary Judgment on February 20, 2020, (DE# 17, 02/20/2020) and the defendant filed his Motion for Summary Judgment on April 20, 2020. (DE #24, 04/20/2020).

## **FACTS**

### I.      **The Plaintiff's Background**

The plaintiff, Geldy Lopez, was born in 1982 and was 33 years old in May 2016, the month and year of her alleged disability onset. (Tr. 229). The plaintiff attended high school in Miami Springs and completed an education through the eleventh grade (Tr. 70, 251). In the disability report, the plaintiff alleged that she had never worked before, however, the plaintiff reported self-employment income during the years 2013 through 2015 for self-employment work. (Tr. 238-246, 250).[2]

The plaintiff suffered a severe staphylococcal infection after birth. (Tr. 360). This infection caused the plaintiff to be hospitalized for months as an infant in critical condition. *Id.* The plaintiff reported that her difficulties began when she started school. *Id.* The plaintiff described herself as isolative and indicated that other students would bully her for her facial paralysis. *Id.* The plaintiff repeated the 3rd grade twice. *Id.* The plaintiff moved to the United States at the age of 14, and eventually moved to New York. *Id.* The plaintiff was advised to continue schooling with adult education at night, which she eventually discontinued. *Id.* The plaintiff has a son with a former partner who she separated from when the child was about two (2) years old.  *Id.*

---

[2] The plaintiff's self-employment in 2013 to 2015 was as a housekeeper. (Tr. 30, 31, 85).

## II.     Relevant Medical History

### A.  Function Report

The plaintiff completed a Function Report on June 15, 2016. (Tr. 260-267). On the Report the plaintiff indicated that she suffers from low intelligence, depression, personality disorder, and that such conditions "completely and utterly" limit her ability to work. (Tr. 260). The plaintiff can do household chores such as cleaning the dishes. (Tr. 262). The plaintiff noted that she goes out twice a week but does not go alone because she is afraid she will get lost. (Tr. 263). The plaintiff indicated that she does not drive because she cannot concentrate. *Id.* The plaintiff indicated she is not intelligent enough to pay bills, count change, or handle a savings account. *Id.* The plaintiff's hobbies include watching television and talking with her daughter daily. (Tr. 264) The only outing the plaintiff takes regularly is to the grocery store. *Id.* The plaintiff is only able to walk one block without stopping and needing a 15-minute break before continuing. (Tr. 265). The plaintiff claims that she can remain focused for approximately 30 minutes and can reportedly not follow written or spoken instructions well. *Id.* The plaintiff noted that she struggles with stress and panicking and that she cannot adapt to changes in her routine well. (Tr. 266).

### B.  Supplemental Pain Questionnaire

The plaintiff completed a Supplemental Pain Questionnaire on June16, 2016. (Tr. 268-270). The plaintiff indicated she experienced constant body aches, specifically around the feet, which altered the way she walked. (Tr. 268). The plaintiff's pains are reportedly triggered by "any physical activity" such as standing, walking, bending or lifting. *Id.* The medication the plaintiff takes to help the pain gives her side effects of dizziness,

nausea, stomach aches and headaches. (Tr. 269). The plaintiff noted that no social activities or hobbies interest her. (Tr. 270).

**C.** Vocational Evaluation Report

The plaintiff attended a weeklong vocational evaluation with Goodwill Industries of South Florida, Inc., and a Vocational Evaluation Report was issued by Lester Ayla, B.A. on February 10, 2005. (Tr. 448, 454). The Vocational Evaluation noted that the plaintiff had "excellent attendance and punctuality throughout her week of evaluation, arriving early each day." (Tr. 450). The plaintiff was "cooperative, polite, and conformed to rules and regulations at all times." *Id.* During actual job performance tasks, the plaintiff "was able to follow oral and written instructions given in English or Spanish." (Tr. 451). This was evidenced by the tests conducted on the plaintiff throughout the week such as: The Basic Skills Test, and The Test of Adult Basic Education (TABE). *Id.* The plaintiff "had no difficulty communicating in English or Spanish." *Id.* The quality of the plaintiff's work was average, but her pace of production was below average. *Id.* Mr. Ayala noted the plaintiff indicated that she was not able to lift more than 15 pounds with her right arm. *Id.*

**D.** Fred Telischi, M.D.

Ms. Lopez first visited with physician Fred Telischi, who specializes in neurotology, in December 2014, to have her hearing and ears evaluated. (Tr. 331). A CT scan was performed on the plaintiff's temporal bones that same month. (Tr. 328). The CT scan demonstrated evidence of prior procedures, including, tympanoplasty and mastoidectomy in the plaintiff's right ear. (Tr. 322). In December 2014, Dr. Telischi diagnosed the plaintiff with bilateral mixed hearing loss, left tympanic membrane perforation, conductive hearing loss in the right ear, and congenital right facial nerve paralysis. (Tr. 333-334). Dr. Telischi

recommended that the plaintiff return for a CT, BAHA evaluation, and the plan for the plaintiff included a left tympanoplasty for her tympanic membrane perforation. *Id.*

On September 16, 2015, the plaintiff returned to Dr. Telischi's office for another checkup. (Tr. 327). The doctor noted that plaintiff was unable to get evaluated for the two procedures that he recommended in December 2014 due to insurance problems. *Id.* On September 16, 2015, the doctor noted that the plaintiff experienced weakness of the right side of her face since birth resulting from an infection she suffered as a complication of her birth, which led to her right facial paralysis and loss of hearing in her right ear. *Id.* Dr. Telischi referred the plaintiff to Dr. Jewett for evaluation of her facial paralysis. (Tr. 329). In November of 2017, Dr. Telischi operated on the plaintiff to perform an IMPLTJ Osseo integrated Temporal Bone with Mastoid, a BAHA implant (Bone-Anchored Hearing Aid) was placed to assist hearing in her right ear. (Tr. 583-586). In December 2017 it was noted that the surgery was successful, and no pain, swelling or redness was reported. (Tr. 604).

**E.** Hillary Snapp, AUD

The plaintiff visited Dr. Snapp's office, an audiologist at the UHealth Ear institute, on October 13, 2015. (Tr. 349). The plaintiff was referred to Dr. Snapp by Dr. Telischi for an audiometric evaluation on her ear. *Id.* Dr. Snapp performed a tympanometry procedure on the plaintiff's left ear. *Id.* The evaluation showed signs consistent with a TM perforation. *Id.* The right ear canal was closed and could not be evaluated. Id. Dr. Snapp also performed an audiometry test which showed results of bilateral mixed hearing loss which was worse in the right ear. *Id.* Dr. Snapp recorded that the plaintiff's "word recognition ability was good in both ears at normal sensation levels." (Tr. 349). Dr. Snapp

recommended a follow up with Dr. Telischi and a BAI (bone-anchored implant) evaluation. *Id.* Dr. Snapp noted that the plaintiff experienced significant benefit when using the BAI abutment system only. (Tr. 350).

**F.** Brianna Kuzbyt, AUD

On February 27, 2018, a few months after the BAHA implant surgery, the plaintiff visited audiologist Dr. Kuzbyt for an evaluation. (Tr. 630). Dr. Kuzbyt reported that the plaintiff experienced improvement in audibility while using the BAHA device. *Id.* The plaintiff did not want any programming adjustments because she felt she was doing well with her new device. *Id.* Dr. Kuzbyt reported that the plaintiff "was doing very well with her device and typically turn[ed] the volume down for comfort." *Id.*

**G.** Brian S. Jewett, M.D.

On October 8, 2015, the plaintiff visited the office of Dr. Brian Jewett after a referral from Dr. Telischi for an evaluation on the partial paralysis on the right side of her face. (Tr. 324, 346). Dr. Jewett noted that the plaintiff had facial paralysis on the right side of the face since early childhood. *Id.* The plaintiff complained of right eye tearing and burning. *Id.* The plaintiff also complained of slurred speech as a secondary effect of the facial paralysis. *Id.* Dr. Jewett discussed with the plaintiff various procedures available to help treat some of the conditions, but no procedure was ordered. (Tr. 325-326, 347-348). Dr. Jewett diagnosed the plaintiff with facial paralysis on the right side. (Tr. 326, 348).

**H.** Vidal Lopez, M.D.

The plaintiff visited Dr. Vidal Lopez, a neurologist and physiatrist, for a psychiatric evaluation on December 22, 2014. (Tr. 360). The plaintiff denied any history of hospitalization for psychiatric care but did report receiving services at Citrus CMHC for about one year. *Id.* Dr. Lopez found that the plaintiff's fund of information was poor. (Tr. 362). Dr. Lopez noted that the plaintiff could only recall one U.S. president and could not recall the capital of the United States or the capital of Cuba. *Id.* The plaintiff was also unable to recall geographical or historical names such as Lincoln or Napoleon. *Id.* The plaintiff was unable to handle money change mentally as she counted in increments of one only. *Id.* During a proverb interpretation evaluation, the plaintiff was unable to provide the meaning of Spanish words or simple proverbs. *Id.* Dr. Lopez described the plaintiff's performance as "impressively empty and her lack of knowledge was almost total." *Id.* Dr. Lopez diagnosed the plaintiff with (1) DSM IV code 296.32: Major Depressive Disorder, Moderate, Recurrent, with psychotic features and (2) code 319: Unspecified Intellectual Disorder. (Tr. 363)

The plaintiff visited Dr. Lopez on February 11, 2016, for a routine checkup to follow up on the plaintiff's progress after taking the medication Latuda for some time. (Tr.359). Dr. Lopez noted that the plaintiff's activity level was normal, but her mood was anxious and depressed. *Id.* The plaintiff was experiencing symptoms of sadness, negative thoughts, anxiety and visual hallucinations. *Id.* The plaintiff had decreased levels of sleep and increased levels of depression, anxiety and psychotic symptoms since her last visit. *Id.* Dr. Lopez noted that the plaintiff was, "not responding very well to her treatment" and that she had "been experiencing . . . visual hallucinations." *Id.* Dr. Lopez recommended

continuing the plaintiff's current plan of care with an increase to 40 mg of Latuda, and a reevaluation in 30 days. *Id.*

The plaintiff visited Dr. Lopez again on March 10, 2016. (Tr.358). Dr. Lopez noted that the plaintiff had symptoms of sadness, negative thoughts, anxiety, visual hallucinations, and was responding well to treatment. *Id.* The plaintiff expressed that her symptoms might be the result of birth related problems and poor school performance when she was young. *Id.* The plaintiff's improvement was minimal, and the same treatment plan was recommended. *Id.*

The plaintiff last visited Dr. Lopez on April 7, 2016. (Tr. 357). The plaintiff's symptoms at the time included sadness, negative thoughts, anxiety, and auditory and visual hallucinations, but there was some improvement with the treatment plan. *Id.* The plaintiff noted increased levels of stress due to ongoing legal problems with her ex-husband. *Id.* The same treatment plan was recommended with an increase in the dosage of Latuda to 60mg. *Id.*

**I.** <u>South Florida ENT Associates</u>

On August 23, 2016, South Florida ENT Associates conducted a consultative exam. (Tr. 456). Dr. Lawrence Grobman, M.D. noted that the plaintiff had severe hearing loss in the right ear and moderate hearing loss in the left ear. (Tr. 456-463). The ENT summary noted that the plaintiff had unsuccessful reconstructive surgery in the ear and that she had "grade 4/6 right facial weakness". (Tr. 462). The plaintiff had voluntary movement in her eye but could not shut her eye completely. *Id.*

**J.** <u>Gilberto Jimenez, M.D.</u>

Between October 2016 and July 2018, reports from Gilberto Jimenez, M.D., an internist, documented the plaintiff's complaints of right upper extremity problems involving her forearm and arm related to peripheral neuropathy of her upper extremity due to an infection. (Tr. 678-734). Dr. Jimenez also noted the presence of a large scar on the plaintiff's forearm and decreased muscle mass. *Id.* The functional assessment of Dr. Jimenez indicated that the plaintiff "[d]oes not need help with Preparing Meals, Dressing, Grooming, Toilet, Eating, Walking, [or] bathing." (Tr. 692). Dr. Jimenez also noted that the plaintiff was "[n]egative for Nervousness, Depression, Tiredness, and Insomnia" as well as for focal weakness and walking troubles. *Id.*

**K.** <u>Seth Dodds, M.D.</u>

On October 26, 2017, the plaintiff visited Dr. Dodds, an elbow, hand and orthopedic surgeon, and was diagnosed with right arm weakness. (Tr.565). Dr. Dodds noted that the plaintiff had an infection as an infant with a wound on her right forearm and that the forearm had a deep scar which could be contributing to weakness. *Id.* Dr. Dodds also noted that the plaintiff appeared to be globally weak in the arm. *Id.*

**L.** <u>Silvana Gonzalez Reiley M.D.</u>

The plaintiff visited Dr. Reiley, a neurologist, on June 14, 2016. (Tr. 491). Dr. Reiley, noted the plaintiff's complaints of pain in her right upper limbs. (Tr. 503). The physical examination revealed some abnormalities, including face asymmetry with the inability to close the eye; limited elevation of the eyebrow; a flat right nasolabial fold; a mild abnormal facial movement on the right side; and a 4/5 strength in the upper extremity. *Id.* Dr. Reiley assessed the plaintiff with right facial palsy with mild motor spasm. *Id.*

**M.** <u>Cecilia Jorge, M.D.</u>

On June 19, 2018, Dr. Jorge performed a psychiatric evaluation of the plaintiff. (Tr. 634). Dr. Jorge noted that the plaintiff's notable symptoms included: (1) depressed and irritable mood; (2) disinterest in activities; (3) disturbance of sleep; and (4) perceptual disturbances. (Tr. 636). Dr. Jorge noted that the plaintiff had visual hallucinations and her medical history was consistent with a staphylococcus infection of the central nervous system suffered at birth that affected her hearing and vision. *Id.* Dr. Jorge noted that the plaintiff's attention, concentration and memory were distractible and impaired, and the plaintiff spoke loudly and was cooperative. *Id.* Dr. Jorge diagnosed the plaintiff with Bipolar disorder and recommended psychiatric services and supportive psychotherapy. (Tr. 636-637).

**N.** <u>Minal Krishnamurthy, M.D.</u>

On December 13, 2016, a state agency non-examining physician, Dr. Krishnamurthy, issued an opinion after evaluating some of the plaintiff's medical records. (Tr. 116-117). Dr. Krishnamurthy concluded, among other things, that the plaintiff's condition resulted in some limitations in the plaintiff's ability to perform work related activities, but the plaintiff's condition did not prevent her from working. (Tr. 120). Dr. Krishnamurthy noted that the plaintiff had some exertional limitations. (Tr. 114). Dr. Krishnamurthy also found that the plaintiff had limited handling and fingering capabilities with her right arm. *Id.*

**O.** Jessy Sadovnik, PsyD

A state clinical psychologist, Jessy Sadovnik, issued an opinion after evaluating the plaintiff's medical records. Dr. Sadovnik concluded that the plaintiff could be reasonably expected to produce the alleged symptoms, but the intensity of the symptoms and their impact on the plaintiff's functioning are not fully consistent with the totality of the evidence. (Tr. 113). Dr. Sadovnik noted that the plaintiff had no significant limitation in remembering locations and work like procedures and that the plaintiff was capable of following routine, simple, repetitive tasks. (Tr. 117-119). The plaintiff was also "capable of attention and concentration for at least 2 hours at a time." (Tr. 119). Dr. Sadovnik noted that, based upon the objective evidence, the plaintiff had the ability to "meet the mental demands of a simple vocation". *Id.*

**III.    ALJ Hearing Testimony**

**A.** The Plaintiff's Testimony

On August 15, 2018, the plaintiff, her attorney, and a VE attended an ALJ hearing. (Tr. 67-89). At the time of the hearing, the plaintiff was 35 years old (Tr. 69) and lived with her 60-year-old mother and 8-year-old son. (Tr. 71). The plaintiff testified that her mother brought her to the hearing and that she has an eleventh-grade education. (Tr. 69, 73). The plaintiff testified at the hearing that she does not speak English. (Tr. 69). The plaintiff testified that she was academically challenged and that she did not receive any special help for her difficulties. (Tr. 75). The plaintiff indicated that she has lived in the United States since 1995, is a United States citizen, is not currently working, and has not worked for many years. (Tr. 70). The plaintiff also testified that in 2015 she made $9,742.00 in self-employment income cleaning houses, and that she cleaned houses in

2010, 2013 and 2014. (Tr. 70-71). The plaintiff indicated that she has a driver's license and owns a car, but drives "very little" and only short distances. (Tr. 71). The plaintiff also stated that she has a psychiatrist and is prescribed medicine to help treat her depression. (Tr. 72). The plaintiff pays her medical cost through Medicaid and receives assistance with food stamps. *Id.* The plaintiff's living expenses are covered by child support for her son, food stamps, and some assistance from her family. (Tr. 73). The plaintiff's mother also receives food stamps. *Id.* The plaintiff testified that she spends a typical day waking up, not leaving her home and spending the day depressed. (Tr. 72-73). The plaintiff rotates between sitting and lying down throughout the day. (Tr. 73). The plaintiff also testified that she spends her days crying, experiences back pain, and experiences pain in her arm. *Id.* The plaintiff testified that she had a hearing aid as a result of a bacterial infection she experienced within 10 days of birth. (Tr. 74). The infection atrophied her face and facial nerves, impacted her arm and required her to get a hearing implant. *Id.* The plaintiff indicated that the pain and "large hole" in her arm resulted from how the infection naturally healed. *Id.* The plaintiff testified that she would not like to do a normal job because it would be socially difficult for her. (Tr. 76). The plaintiff testified that she feels depressed almost daily, her marriage was difficult, and that her ex-husband verbally, psychologically, and sexually abused her which adversely affected her. (Tr. 77-78) The plaintiff indicated that she has visual and auditory hallucinations almost daily and that she can only lift and carry 10 pounds or less with her right arm. (Tr. 79-80). The plaintiff also stated that she was born with one hip higher than the other, which contributes to issues walking and that she can only walk one block

before stopping and can only stand for less than one hour until needing to sit down. (Tr. 80-81).

**B.** Vocational Expert Testimony

Lorin Lovely, a VE, testified at the ALJ hearing and classified the plaintiff's past job as a housekeeper as having a Specific Vocational Preparation (SVP) level of 2 with a Dictionary of Occupational Titles (DOT) exertional level of light. (Tr. 82-83). During the VE's testimony, the ALJ indicated that due to the plaintiff's total earnings annually, her past work was not a substantial gainful activity (SGA). (Tr. 83). The ALJ posed a hypothetical to the VE mirroring the plaintiff's age, education and work experience. *Id.* The ALJ also asked the VE to assume the hypothetical individual would be restrained to the following limitations: the individual can never climb ladders, ropes, or scaffolds; must avoid moderate exposures to loud noise and must not work above office level noise; can understand, remember, and carry out simple instructions, and make simple work related decisions; can sustain attention and concentration for two-hour periods; is limited to occasional interactions with coworkers and the general public; is limited to a set routine and procedures with few changes during the day; cannot work at a fast paced environment where one is evaluated on quotas, and can maintain regular attendance and be punctual within customary tolerances.  (Tr. 83-84). Based on this hypothetical, the ALJ asked the VE if there were jobs available in the economy that the hypothetical individual could perform. *Id.* The VE testified that the hypothetical individual would be able to find jobs in the economy, such as: a towel folder with an SVP of 2 and an exertional level of light; an office helper with an SVP of 2 and exertional level of light; and a garment sorter,

with an SVP of 2 and an exertional level of light. (Tr. 84-85).  The VE testified that the hypothetical individual could perform past work as a housekeeper.[3] (Tr. 85).

**THE ALJ'S DECISION-MAKING PROCESS**

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(I); 423(d)(1); 20 C.F.R. § 404.1505 (2019). The impairment(s) must be severe, making the plaintiff "unable to do his previous work . . . or any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(1); 20 C.F.R. §§ 404.1505-404.1511 (2005).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a). The ALJ must first determine whether the plaintiff is engaging in substantial gainful activity (SGA). If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. § 404.1520(a)(4)(i)

Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a combination of impairments. If the plaintiff does not, then a finding of non-disability is made, and the inquiry ends. 20 C.F.R. § 404.1520(a)(4)(ii).

Third, the ALJ compares the plaintiff's severe impairments to those in the listings of impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520(d), Subpart P, Appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such

---

[3] The ALJ noted that the plaintiff previously worked as a self-employed housekeeper, but the plaintiff's past work as a housekeeper did not meet the statutory requirements for past relevant work because it was not performed at substantial gainful activity levels.  (Tr. 30).

impairments are established, the regulations require a finding of disability without further inquiry into the plaintiff's ability to perform other work. *See*, *Gibson v. Heckler*, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d). If it does not, the analysis proceeds to the next step.

Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "Residual functional capacity" (RFC) is defined as "what you can do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination considers "all relevant evidence," including medical evidence, the claimant's own testimony and the observations of others. *Id.* If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of proof shifts to the Commissioner to show at step five that there is other work available in the national economy which the plaintiff can perform. *Dominguez v. Astrue*, No.0821494 2009 U.S. Dist. LEXIS 73434, at 14 (S.D. FL. July 29, 2009); 20 C.F.R. § 404.1520(e)-(9); *see, Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) (The claimant bears the initial burden of proving that he is unable to perform previous work.)

Fifth, the ALJ must determine whether the plaintiff is able to do any other work considering her RFC, age, education, and work experience to see if the plaintiff can make an adjustment to other work. If the plaintiff can make an adjustment to other work, a finding that the plaintiff is not disabled is made. In other words, if the plaintiff cannot perform her past relevant work, the ALJ must decide if she can perform any other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(iv).

## THE ALJ'S FINDINGS

The ALJ conducted the five-step sequential evaluation process outlined in 20 C.F.R section 404.1520 and determined that the plaintiff was not disabled under the Social Security Act as of May 11, 2016. (Tr. 16).  At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since May 11, 2016. (Tr. 17).

At step two, the ALJ found that the plaintiff had the following severe impairments: curvature of the spine; bipolar disorder; infection at birth resulting in mixed hearing loss and peripheral neuropathy of the right upper extremity due to an infection. (Tr. 17). The ALJ found that, although the plaintiff alleged right side facial paralysis, the evidence supports that this is a non-severe impairment as it does not significantly limit her ability to perform basic physical or mental work activities. (Tr. 18). The ALJ found that there is no evidence in the record that the plaintiff's facial weakness/paralysis interfered with her ability to clean houses. *Id.* The ALJ also found that there is no evidence which supports that the plaintiff has difficulties with speech. *Id.*

In the third step, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, specifically subparagraph B. (Tr. 18). According to the ALJ, subparagraph B criteria is not an RFC assessment but is used to rate the severity of mental impairments at steps 2 and 3. (Tr. 21)

The ALJ gave Dr. Krishnamurthy's opinion great weight because it is consistent with the record, which is devoid of showing that the claimant's impairments meet or equal any listing. (Tr. 18). Dr. Krishnamurthy is a state agency medical reviewer who opined that the plaintiff's impairments did not meet or equal any listing. *Id.* In order to qualify

under the statute, the "impairment must result in at least one extreme or two marked limitations in a broad area of functioning which" include: understanding, remembering, or applying information, or interacting with others. *Id.* A marked limitation means that functioning in a particular area independently, appropriately, and effectively is seriously limited. *Id.*

The ALJ found that the plaintiff only has a mild limitation in understanding, remembering, or applying information. *Id.* According to the ALJ, the plaintiff's function report indicated she does not need reminders to go places, take medications, or take care of personal needs and grooming. *Id.* The function report also indicated that the plaintiff's insight and judgment were fair and that her thought processes were intact. (Tr. 18-19). The ALJ noted that the plaintiff does have a car and driver's license and acknowledges that she does drive.[4] (Tr.19). A vocational evaluation conducted by Goodwill Industries of South Florida, Inc. showed that the plaintiff was also able to follow oral and written instructions given in English or Spanish by demonstrating the appropriate filtering and retention of information. (Tr. 19, 448).

The ALJ found that the plaintiff has a moderate limitation in interacting with others. (Tr. 19). The ALJ noted that the plaintiff's function report indicates that there were no changes in social functioning since her impairments began, and that she gets along very well with her family, neighbors and authority figures. (Tr. 19) The plaintiff had never been fired or laid off from a job because of issues relating to colleagues. *Id.*

---

[4] There are conflicts in the record with respect to the plaintiff's driving.  During the ALJ hearing, the plaintiff indicated that she has a driver's license and owns a car and that she drives but does not drive very much.  (Tr. 71).  In an Adult Function Report dated June 15, 2016, the plaintiff reported that she does not drive because she cannot concentrate. (Tr. 263).

The ALJ also found that the plaintiff has only a moderate limitation with regards to concentrating, persisting or maintaining pace. *Id.* State agency medical consultant Jessy Sadovnik reported that the plaintiff only had a moderate limitation supported by evidence in the function report. *Id.* Dr. Jorge also opined that the plaintiff's attention, concentration and memory were intact. *Id.* Similarly, the plaintiff has no difficulty communicating in English or Spanish.[5] *Id.* Moreover, the plaintiff was capable of following routine, simple, repetitive tasks. (Tr. 119).

Considering State clinical psychologist Jessy Sadovnik's report, the Function Report and the Vocational Rehabilitation documented, the ALJ found the plaintiff has no limitation in adapting or managing herself. (Tr. 20). The ALJ noted that the plaintiff was present and punctual throughout a week of her vocational evaluation and showed up early every day. *Id.* The function report notes no one assists the plaintiff in caring for her son or others. *Id.* The plaintiff's primary care doctor, Dr. Jimenez, reported that the plaintiff appeared comfortable and spoke clearly. *Id.* The ALJ found that because the claimant's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, sub paragraph B is not satisfied. *Id.*

At the fourth step, an ALJ is tasked with determining if the plaintiff has the RFC to perform past relevant work. However, the ALJ in this matter found that the plaintiff does not have any past relevant work. (Tr. 30). Specifically, the ALJ noted that the plaintiff previously worked as a self-employed housekeeper, but the plaintiff's past work as a

---

[5] There is a conflict in the record as to whether the plaintiff speaks English. During the ALJ hearing the plaintiff testified that she does not speak English. However, the Vocational Evaluation Report by Goodwill Industries indicates that the plaintiff could communicate in English and Spanish and follow written and oral instructions in English and Spanish. (Tr. 451).

housekeeper did not meet the statutory requirements for past relevant work because it was not performed at substantial gainful activity levels. *Id.*

In the fifth step, the ALJ found that the plaintiff has the RFC to perform light work as defined in 20 CFR 416.967. (Tr. 21). After careful consideration of the entire record, the ALJ found that the plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently." *Id.* The ALJ also found that the plaintiff "can stand and walk, with normal breaks and sit, with normal breaks, for 6 hours in an 8-hour workday." *Id.* The ALJ further found that the plaintiff "should not climb ladders, ropes, or scaffolds" but "can frequently handle and finger with her right upper extremity and has no limitations with her left upper extremity." *Id.* The ALJ noted that the plaintiff should avoid even moderate exposure to loud noises or anything above office level noise, the plaintiff can sustain attention and concertation for 2-hour periods at a time, and the plaintiff is able to respond appropriately to supervision. *Id.* The ALJ found that the plaintiff requires an occupation with only occasional interaction with coworkers and only occasional interaction with the public on routine matters. *Id.* For the foregoing reasons, the ALJ found the plaintiff to have the RFC to perform light work. *Id.* (There was not past relevant work. (Tr.30)).

The ALJ determined, after "considering the plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform". (Tr. 31). The VE testified that the plaintiff would be able to perform occupations such as: towel folder, office helper,

garment sorter, or a housekeeper.[6] *Id.* Accordingly, the ALJ concluded that the plaintiff can make a successful adjustment to other work that exists in the national economy.  (Tr. 32).

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the Court must determine whether it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C.S. § 405(g) (2006); see, *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute their discretion).  On judicial review, decisions made by the Commissioner of Social Security are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C.S. § 405(g) (2006); *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999).

"Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See, *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

---

[6] The ALJ noted that the plaintiff's "prior work as a housekeeper (sic) was not technically past relevant work, but the vocational expert testified she is capable of performing the required duties of this job." (Tr. 31).

This standard of review applies to findings of fact, and no presumption of validity attaches to the Commissioner's legal conclusions, including whether the Commissioner applied the proper standard in reviewing claims. See *Cornellius v. Sullivan*, 936 F.3d 1143, 1145-46 (11th Cir. 1991) (finding the court must reverse where the Commissioner fails to apply the correct law or fails to provide the reviewing court with sufficient reasoning for determining that the Commissioner conducted proper legal analysis); accord *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *See, Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). The court may not, however, decide the facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision the reviewing court must affirm if the decision is supported by substantial evidence. *See, Miles*, 84 F.3d at 1400; *see also Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. *See, Martin*, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. *Id.*

## LEGAL ANALYSIS

The plaintiff seeks to reverse and remand the Commissioner of Social Security's final ruling and contends that the ALJ failed to resolve the "apparent conflict" between the testimony of the VE and the information contained in the Dictionary of Occupational Titles. The plaintiff also contends that the ALJ failed to articulate the proper weight accorded to the opinions of the plaintiff's physicians and that the ALJ improperly assessed the plaintiff's symptoms and limitations.

**I.**     **The ALJ Did Not Fail to Resolve the "Apparent Conflict" Between the Testimony of the VE and the Information Contained in the Dictionary of Occupational Titles (DOT)**

The Eleventh Circuit has defined "apparent conflict" as something that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. *Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353, 1365 (11th Cir. 2018). SSR 00-4p imposes an affirmative duty on the ALJ to identify any "apparent" conflict and to resolve it. *Id.* The failure to properly uphold this duty means the ALJ's decision is not supported by substantial evidence. *Id; see also Johnson v. Comm'r of Soc. Sec.* (11th Cir. 2019) (holding that the ALJ must identify and resolve the apparent conflict before relying on the VE evidence to support a determination of disabled or not disabled.)

In response to a hypothetical posed to the VE, which included a hypothetical person who should avoid even moderate exposure to loud noises as well as exposure to work above office level noise, the VE testified that the hypothetical person, intended to mirror the symptoms of the plaintiff, would be able to perform light work with an SVP of 2 with her RFC.  (Tr. 84-85). Upon analysis of the fifth step in the sequential process, the ALJ found that the plaintiff has the RFC to perform light work as defined in 20 CFR 416.967. (Tr. 21). The ALJ is then required to demonstrate that there are jobs in the national economy that the plaintiff can perform. The VE testified that jobs available in the national economy which the plaintiff could perform included towel folder, office helper, garment sorter, and housekeeper. The VE testified that a hypothetical person similar to the plaintiff should avoid moderate exposure to loud noises as well as exposure to work above office level noise and offered available jobs in the economy which are all rated as noise intensity level 3 jobs according to the U.S. Department of Labor's Selected

Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). The SCO uses a ranking scale of 1-5, ranging from very quiet[7] to very loud, for determining noise intensity on the job. U.S. Dep't of Labor, <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO), App'x D, Environmental Conditions (1993). The jobs offered as evidence by the VE have all been rated level 3, which is defined as a moderate level of noise, which is similar to the noise level in an office where typewriters are used.

The plaintiff asserts that the plaintiff's RFC is only consistent with jobs with noise levels of one (1) and two (2).  (Plaintiff's Motion at p. 8).   Jobs with a noise level rating of 3 are jobs with a similar noise level rating to offices where typewriters are used.  Offices where typewriters are used, are offices, and the noise level in such offices is a level 3, which is consistent with both the VE testimony, the DOT, and the SOC. Accordingly, because the plaintiff's RFC allows for noise level 3 jobs, there is no apparent conflict in this case between the VE's testimony of what job positions are available to the plaintiff to perform in the economy and the DOT/SOC noise levels.

The ALJ did not fail to uphold her duty to identify and resolve potential conflicts because "a reasonable comparison of the DOT with the VE's testimony" simply does not suggest "there is a discrepancy," *Washington*, 906 F.3d at 1356, such that an apparent conflict exists in this case. The ALJ only has a duty to resolve a conflict that is apparent by a reasonable comparison of the DOT with the VE's testimony. *Washington,* 906 F.3d at 1365 (11th Cir. 2018). Here, a reasonable comparison of the DOT and VE's testimony

---

[7] Level 2 noise is similar to the noise at a library.  Level 1 noise is similar to the noise in an isolation booth.  Level 3 noise is similar to the noise at a business office where typewriters are used.  U.S. Dep't of Labor, <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO), App'x D, Environmental Conditions (1993).

does not reveal an apparent conflict because the jobs selected by the VE allows the plaintiff to work at a moderate noise level and not be exposed to work above office level noises.

## II.  The ALJ Did Not Have to Articulate the Weight Assigned to Medical Treatment Records Which Did Not Contain Medical Opinions

The plaintiff contends that the ALJ improperly evaluated the opinions of her medical doctors and failed to articulate the weight assigned to the medical opinions of treating physicians. However, the ALJ does not need to articulate the weight assigned to those exhibits which are not considered medical opinions. *See Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018). In *Romero*, the Eleventh Circuit explained that a treatment record is not a medical opinion an ALJ must weigh, when it does not express a limitation about the claimants functioning. The Southern District of Florida has also explained that a treatment record is not a medical opinion an ALJ must weigh when it does not express a limitation about a claimant's functioning. See, e.g., *Rodriguez v. Berryhill*, No. 18-21425-Civ- TORRES, 2019 WL 1777568.

In *Romero*, the court held that medical records doctors prepare are not medical opinions. 752 F. App'x 906, 908. The medical records must address, in some form, the plaintiff's ability to function. *Id.* Here, the ALJ did not fail to accord the weight attributed to the plaintiff's treating physicians because their treatment records did not contain opinions on the plaintiff's ability to function. The ALJ had no duty to allocate any weight to treatment records that did not express medical opinions.

The plaintiff asserts that the case of *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011) applies in this matter. *Winschel* addresses whether a

treating physician's treatment records should be regarded as medical opinions by the ALJ. As noted by the defendant in his motion for summary judgment, in

> *Winschel*, the court determined that a treating physician's treatment notes included judgments about the severity of the claimant's impairments and a statement about the claimant's limitations, and the ALJ erred in not addressing the physician's opinions on those issues. *See id.* at 1179. Plaintiff points to no such statements or judgments here.

(Defendant's Motion for Summary Judgment, p. 10, fn. 7).  In *Winschel*, the Eleventh Circuit held that the ALJ failed to articulate the weight assigned because the "treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments." *Id* at 1176. The treatment records amounted to a "statement from [a] physician ... that reflect[s] judgments about the nature and severity of [Winschel's] impairments. . . ." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Here there are no such statements or judgments, so the reasoning in *Romero* controls. The Eleventh Circuit, in *Romero*, held that a medical record must address, in some form, the plaintiff's ability to function to be a medical opinion. 752 F. App'x 906, 908.  Here, the ALJ specifically noted that she had granted significant weight to the exhibits of the treating physicians, but that those reports "do not delineate functional limitations, and to that extent cannot be weighed within the meaning of the regulations of 20 CFR 416.929." (Tr. 30).

Even if the treatment records were medical opinions, there is no rigid requirement that the ALJ must specifically refer to every piece of evidence in the decision as long as the decision is sufficient enough that one concludes the plaintiff's condition was considered as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If the ALJ's decision reflects that she considered these records and the decision was consistent

with the record, any error failing to assign weight was harmless. *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017). Here, the ALJ's decision to deny the plaintiff's benefits is consistent with the records and reflects a consideration of the plaintiff's complete condition and any failure to assign weight should be viewed as harmless.

The plaintiff also asserts that the ALJ improperly evaluated this case under the revised standard of 20 C.F.R. § 416.920c (2017), which eliminates the "treating physician rule" that accords more weight to those medical opinions of treating physicians. 20 C.F.R. § 416.920c is only intended to apply to social security cases which are filed after March 27, 2017. If the ALJ applied this standard of law, then it would be a clear error because the plaintiff filed her complaint in 2016. However, the ALJ did not apply the wrong standard to weighing medical opinions. Nothing in the ALJ's decision (Tr. 15-32) suggests she applied the revised regulations as opposed to the applicable regulations for cases filed before March 27, 2017. The ALJ specifically stated that she, evaluated the "opinion evidence in accordance with the requirements of 20 CFR 416.927." (Tr. 21). Lastly, the ALJ indicated that certain records submitted could not be weighed within the meaning of 20 CFR 416.929. (Tr. 30).

### III.   **The ALJ Properly Evaluated the Plaintiff's Subjective Complaints**

The ALJ properly evaluated the plaintiff's subjective complaints of disabling symptoms, and properly discredited the plaintiff's testimony. To prove disability based on a claimant's subjective complaints, the claimant must first provide evidence of the medical condition triggering the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(a), (b);

SSR 16-3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Moreover, the claimant must either: (a) provide objective medical evidence confirming the severity of the claimant's alleged symptoms; or (b) show that the claimants objectively determined medical condition could reasonably be expected to cause the claimant's alleged symptoms. *Id.* If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms, but the claimant shows that his medically determined impairment could reasonably be expected to produce the claimant's alleged symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine whether the claimant's alleged symptoms limit the claimant's ability to work. See 20 C.F.R. § 404.1529(c), (d); SSR 16-3p; Wilson, 284 F.3d at 1225-26.

When evaluating whether the claimant's alleged symptoms limit the claimant's ability to work, the ALJ may discredit the claimant's subjective statements if they are inconsistent with the evidence in the record. See 20 C.F.R. §§ 404.1629(c)(4) (2017), 416.929(c)(4) (2017); *Dyer*, 395 F.3d at 1212. The ALJ must show that the determination is not "a broad rejection" preventing the reviewing court from concluding that the ALJ considered the medical condition as a whole. *Id.*

Here, substantial evidence supports the ALJ's credibility determination. The ALJ found that the plaintiff's medically determined impairments could reasonably be expected to produce the plaintiff's alleged symptoms, so the ALJ proceeded to evaluate whether the alleged symptoms limited the plaintiff's ability to work. (Tr. 21-30).

In evaluating the intensity, persistence, and functionally limiting effects of the plaintiff's alleged symptoms, the ALJ noted several inconsistencies between the plaintiff's

subjective complaints and the evidence on record. *Id.* As noted below, the ALJ provided specific examples of the inconsistencies underlying this credibility determination, including examples from the objective medical evidence and other subjective evidence on record. *Id.*

The ALJ provided examples of objective medical evidence in the record that conflicts with the plaintiff's subjective complaints. (Tr. 24). The ALJ also noted that the plaintiff's primary care physician, Dr. Jimenez, indicated that the plaintiff "[d]oes not need help with preparing meals, dressing, grooming, toilet, eating, walking, [or] bathing." (Tr. 25, 692). Dr. Jimenez also noted that the plaintiff was negative for nervousness, depression, tiredness, insomnia, focal weakness, and walking troubles. (Tr. 692).

The ALJ also noted that the plaintiff's daily activities and abilities are not consistent with the severity of the plaintiff's alleged symptoms. (Tr. 24) The ALJ provided examples throughout the record that cast further doubt as to the severity of the work-limiting effects of the plaintiff's symptoms. *Id.* Specifically, the ALJ noted that the plaintiff could drive on her own, take care of a child, go grocery shopping, remember to be on time and conduct other day to day activity activities without assistance. (Tr. 21-30).

In sum, substantial evidence in the record is inconsistent with the plaintiff's subjective suggestion that her ailments are so severe as to preclude her ability to work. The ALJ provided a specific reason for discrediting the plaintiff's subjective complaints: inconsistencies between the plaintiff's subjective complaints and the evidence in the record. The ALJ articulated this reason by providing specific examples of the inconsistencies supporting her determination of the plaintiff's credibility. Accordingly, the undersigned finds that the ALJ correctly assessed the plaintiff's credibility.

## CONCLUSION

In accordance with the foregoing Report and Recommendation, the undersigned respectfully recommends that the Plaintiff's Motion for Summary Judgment (DE #17 2/20/20) be **DENIED** and the Defendant's Motion for Summary Judgment (DE #24 4/20/20) be **GRANTED.**

## RECOMMENDATION

In accordance with the foregoing Report and Recommendation, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, the Defendant's Motion for Summary Judgment (DE #24, 4/20/20) be **GRANTED** and the plaintiff's Motion for Summary Judgment (DE #17, 2/20/20) be **DENIED**. The parties have fourteen (14) days from the date of receipt of the report and recommendation within which to serve and file written objections, if any, with the United States District Court Judge Ungaro. Failure to file timely objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the unobjected-to factual and legal conclusions contained in this Report, except on the grounds of plain error, if necessary and in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Jonson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2019).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 24th day of July 2020.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE